UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARRELL D. LADNIER,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-1278** |
| **REC MARINE LOGISTICS, L.L.C.,**<br>**ET AL.**<br>    **Defendants** | **SECTION "E"** |

# ORDER

Before the Court is a Motion for Partial Summary Judgment filed by Defendant REC Marine Logistics, LLC ("REC Marine").[1] Plaintiff, Darrell D. Ladnier, formerly employed by REC Marine as a vessel captain, alleges he was injured on or about February 21, 2014 while participating in a required training exercise.[2] REC Marine seeks summary judgment on Plaintiff's claim for maintenance and cure benefits. For the reasons that follow, the Court grants REC Marine's Motion for Partial Summary Judgment on Plaintiff's maintenance and cure claim.

# BACKGROUND

In June 2013, Plaintiff Darrell D. Ladnier was hired by REC Marine as a vessel captain.[3] On or about February 21, 2014, Plaintiff participated in a Helicopter Underwater Escape Training ("HUET") exercise at a facility owned, operated, and controlled by Defendant SafeZone Safety Systems, LLC ("STC").[4] During his training, Plaintiff sat inside a helicopter simulator, which was inverted in a pool as part of the

---

[1] R. Doc. 26.
[2] R. Doc. 1.
[3] R. Doc. 26-4, p. 2.
[4] R. Doc. 1, p. 2; R. Doc. 34-1, p. 1 (stating the accident actually occurred on February 21, 2014).

1

exercise.[5] Plaintiff claims his safety belt failed to operate properly when the simulator was inverted, thereby trapping him underwater and causing him to struggle to escape.[6] Plaintiff allegedly suffered injuries to his right shoulder as a result of this incident.[7] Following the exercise, Plaintiff was diagnosed with a right shoulder rotator cuff tear.[8] Plaintiff underwent two repair surgeries but claims he remains unfit and incapable of returning to duty as a seaman.[9] Plaintiff's doctor also has recommended Plaintiff undergo a third surgery for a reverse right shoulder replacement.[10]

On June 6, 2014, Plaintiff filed suit against REC Marine and STC asserting claims for negligence.[11] Additionally, Plaintiff seeks maintenance and cure benefits from REC Marine for his right shoulder injury.[12] Although REC Marine paid for Plaintiff's first two surgeries, it now refuses to pay for the third recommended surgery.[13] On April 30, 2015, REC Marine filed a Motion for Partial Summary Judgment seeking summary judgment on Plaintiff's maintenance and cure claim.[14] REC Marine argues Plaintiff is precluded from receiving maintenance and cure benefits pursuant to the Fifth Circuit's decision in *McCorpen v. Central Gulf Steamship Corp.* and its progeny because Plaintiff concealed material medical facts relating to a pre-existing shoulder condition while filling out REC Marine's pre-employment medical history questionnaires.[15] Plaintiff responds arguing summary judgment is inappropriate because there are genuine disputes of material fact

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] R. Doc. 26-5, p. 2.
[9] R. Doc. 1, ¶ 9.
[10] R. Doc. 26-5, p. 6.
[11] R. Doc. 1.
[12] R. Doc. 1, ¶¶ 8, 10.
[13] R. Doc. 31, p. 2.
[14] R. Doc. 26.
[15] R. Doc. 26-1, p. 1. Although REC Marine states Plaintiff also failed to disclose prior wrist and back injuries, Plaintiff does not seek maintenance and cure benefits with respect to treatment of these areas.

2

as to all three elements of the *McCorpen* defense.[16]

## STANDARD OF LAW

Rule 56 of the Federal Rules of Civil Procedure mandates the Court "grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[18] All reasonable inferences must be drawn in favor of the non-moving party,[19] but "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment."[20] The Court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party."[21]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[22] The non-moving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade

---

[16] R. Doc. 31.
[17] Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). A fact is "material" if it may affect the outcome of the action, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[18] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). S*ee also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[19] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).
[20] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation marks and citation omitted).
[21] *Delta*, 530 F.3d at 399.
[22] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (internal quotation marks and citation omitted).

the reasonable fact-finder to return a verdict in favor of the moving party."[23]

If the dispositive issue is one on which the non-moving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the non-moving party's claim.[24] The burden then shifts to the non-moving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[25] The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial.[26]

## LAW AND ANALYSIS

REC Marine seeks partial summary judgment on Plaintiff's maintenance and cure claim, specifically arguing REC Marine does not have an obligation to pay Plaintiff maintenance and cure benefits under the *McCorpen* defense.[27] It is well established that a Jones Act seaman[28] who suffers injury in the course and scope of his service of a vessel has a right to maintenance and cure benefits.[29] Maintenance and cure benefits may be awarded "even where the seaman has suffered from an illness pre-existing his employment."[30] There is, however, "a general principle that [maintenance and cure benefits] will be denied where [the seaman] knowingly or fraudulently conceals his

---

[23] *Id.* at 1265.
[24] *See Celotex*, 477 U.S. at 325.
[25] *See id.* at 324.
[26] *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.
[27] R. Doc. 26 (citing *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547 (5th Cir. 1968)).
[28] The parties do not appear to dispute that Plaintiff is a Jones Act seaman.
[29] "Maintenance" is the seaman's right to food and lodging, and "cure" is the seaman's right to necessary and appropriate medical services. *See Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1012 (5th Cir. 1994); *Breese v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir. 1987) (citing *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962)). Both maintenance and cure extend to the point at which the seaman reaches maximum medical improvement. *Breese*, 823 F.2d at 104.
[30] *McCorpen*, 396 F.2d at 549 (5th Cir. 1968). *See also Brown v. Parker Drilling Offshore Corp.,* 410 F.3d 166, 171 (5th Cir. 2005).

4

illness from the shipowner," which is commonly referred to as the *McCorpen* defense.[31] "Specifically, when the shipowner requires a prospective seaman to undergo a pre-hiring medical evaluation, and the seaman either intentionally misrepresents or conceals material medical facts, then the seaman is not entitled to an award of maintenance and cure."[32]

To rely on the *McCorpen* defense to deny a seaman's maintenance and cure claim, an employer must establish three elements: (1) the seaman–plaintiff intentionally misrepresented or concealed medical facts; (2) the misrepresented or concealed facts were material to the employer's hiring decision; and (3) there exists a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage.[33] The Court finds REC Marine has established each element of the *McCorpen* defense.

### 1.   **Intentional Misrepresentation or Concealment**

The first element of the *McCorpen* defense requires REC Marine to establish Plaintiff intentionally misrepresented or concealed medical facts. "*McCorpen's* intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination. Rather, this prong 'is an essentially objective inquiry.'"[34] The Fifth Circuit has held that the "[f]ailure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information satisfies the

---

[31] *McCorpen,* 396 F.2d at 548.
[32] *Owens v. Abdon Callais Offshore, LLC*, No. 10-3296, 2011 WL 2443687, at *4 (E.D. La. June 14, 2011) (Vance, J.) (citing *McCorpen*, 396 F.2d at 549).
[33] *McCorpen*, 396 F.2d at 549. *See also Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005).
[34] *Parker v. Jackup Boat Serv., LLC,* 542 F. Supp. 2d 481, 493 (E.D. La. 2008) (Zainey, J.) (quoting *Brown*, 410 F.3d at 174–75).

'intentional concealment' requirement."[35]

REC Marine asserts the first element of the *McCorpen* defense is met because Plaintiff intentionally concealed certain medical history, despite the fact Plaintiff completed pre-employment questionnaires designed to elicit such information.[36] Prior to being hired in 2013, REC Marine required Plaintiff to complete two separate pre-employment medical history questionnaires and also required him to be examined by an REC Marine physician.[37] Given the physical nature of the work of a vessel captain, REC Marine claims it requires applicants to disclose prior injury or disease to certain body parts, including the shoulders, "to form part of an overall assessment of whether the [prospective employee is] physically capable of performing the work of a vessel captain, as well as any training which REC Marine would require of its captains, such as water survival and [HUET]."[38]

REC Marine claims Plaintiff intentionally concealed his extensive history of shoulder problems and treatment, as well as other prior injuries and/or surgeries, when filling out the pre-employment questionnaires in order to avoid a negative result in the hiring process.[39] REC Marine points to Plaintiff's doctor's deposition, during which the doctor testified that before the Plaintiff's hiring and the HUET exercise took place, he had diagnosed Plaintiff with "bilateral shoulder impingement," which the doctor described as inflammation of the tendons of the rotator cuff.[40] Additionally, the doctor

---

[35] *Brown*, 410 F.3d at 174 (internal quotation marks and citation omitted).
[36] R. Doc. 30, ¶ 3.
[37] R. Doc. 30; R. Doc. 31-1, ¶ 2.
[38] R. Doc. 26-6, pp. 5, 7.
[39] *Id.*, pp. 4, 7. REC Marine states Plaintiff also failed to disclose prior wrist and back injuries. However, Plaintiff does not seek maintenance and cure benefits with respect to treatment of these areas, and the Court cannot consider Plaintiff's credibility at the summary judgment stage.
[40] R. Doc. 31-6, p. 4.

6

believed Plaintiff had some arthritis in his shoulders.[41] Plaintiff's medical records confirm that the doctor treated him for recurrent bilateral shoulder pain with steroid injections into both shoulders and prescription medication in both 2011 and 2012—before REC Marine hired Plaintiff—and injected Plaintiff's shoulders again on January 21, 2014—after Plaintiff was hired and only one month prior to the HUET exercise.[42]

One of the pre-employment questionnaires Plaintiff filled out during REC Marine's hiring process states at the top: "Attention: You must answer truthfully regarding the below medical conditions. Failure to answer truthfully will result in immediate termination and forfeiture of workers compensation and forfeiture of maintenance and cure."[43] The questionnaire goes on to list numerous medical conditions and instructs the applicant to circle Y for YES and N for NO if the applicant currently has any of the symptoms listed or has significantly experienced the symptoms in the past.[44] Plaintiff circled "No" for all the symptoms and conditions listed, which included "injured shoulder," "any joint problems," and "bone/joint disorder."[45]

The post-offer pre-employment questionnaire is more detailed. It asks: "Do you have now or have you ever had in the past, injury or disease to" certain body parts.[46] Plaintiff checked "NO" for all body parts, including when asked about his shoulders.[47] The same questionnaire also asks: "Have you ever had or experienced" certain medical conditions, including arthritis.[48] Plaintiff checked "YES" for "arthritis."[49] The form instructs the prospective employee to "explain in detail the nature of the injury or

---

[41] R. Doc. 31-6, p. 2.
[42] R. Doc. 26-5, p. 8; R. Doc. 26-6, pp. 1–2.
[43] R. Doc. 26-6, p. 4.
[44] *Id.*
[45] *Id.*
[46] *Id.*, p. 5.
[47] *Id.*, pp. 5–6.
[48] *Id.*, p. 10.
[49] *Id.*

condition, the type of treatment received, and the name and phone number of doctor, medical provider or medical facility providing the treatment" if the prospective employee answered "YES" to any of the medical questions.[50] Plaintiff did not include any explanation or contact information for his doctor, even though he checked "YES" with regard to arthritis.[51] This questionnaire also has a certification at the end stating the prospective employee "understand[s] that the failure to answer truthfully to any of the above questions may result in a denial of any right . . . to maintenance and cure benefits."[52]

Plaintiff never disclosed to REC Marine that he had been diagnosed with bilateral shoulder impingement prior to his hiring. REC Marine contends that, even if bilateral shoulder impingement is not considered an "injury," it most certainly constitutes a "disease" of the shoulder, and the questionnaires prompted Plaintiff to disclose any such injury or disease.[53] Additionally, even though Plaintiff disclosed his arthritis, REC Marine contends Plaintiff failed to further describe his arthritis in detail and to provide his treating doctor's information, as instructed by the questionnaire.[54] As a result, REC Marine asserts the first element of the *McCorpen* defense is satisfied.

Plaintiff responds arguing there are genuine disputes of fact as to the intentional concealment element. Plaintiff testified at his deposition that he did not intentionally misrepresent or conceal medical facts.[55] Additionally, Plaintiff takes issue with the fact

---

[50] R. Doc. 26-2, p. 15.
[51] *Id.* The form requires the prospective employee to indicate his response verbally to the interviewer and in writing. Each written response is initialed by the prospective employee and the interviewer. Additionally, the prospective employee and interviewer sign each page. R. Doc. 26-6, pp. 5–19.
[52] R. Doc. 26-6, p. 19.
[53] R. Doc. 34, p. 2.
[54] R. Doc. 26-6, p. 15; R. Doc. 34, pp. 1–2.
[55] R. Doc. 31, pp. 4–5.

8

that the questionnaires refer to "injury to his shoulder" or "any other disease."[56] Plaintiff argues he never injured his shoulder and did not consider arthritis to be an injury or a disease.[57] Plaintiff states he disclosed what he believed to be his shoulder condition—arthritis—on the questionnaires, and REC Marine did not inquire as to any additional details.[58] He contends he should not be faulted for REC Marine's failure to inquire further. For these reason, Plaintiff argues there is at least a genuine dispute of material fact as to whether he intentionally concealed a pre-existing shoulder condition.

Although Plaintiff testified he did not intentionally misrepresent or conceal medical facts, the Court's inquiry into the intentional concealment prong "does not require a finding of subjective intent."[59] In this case, Plaintiff failed to disclose on the pre-employment questionnaires his bilateral shoulder impingement diagnosis and the nature of his arthritis, as well as to explain his past treatment for shoulder pain, including injections and prescription medication. Because the pre-employment questionnaires were obviously designed to elicit such information, the Court finds Plaintiff intentionally misrepresented or concealed medical facts for purposes of the *McCorpen* defense.

### 2. Materiality

The second element of the *McCorpen* defense requires REC Marine to show Plaintiff's misrepresentation or concealment was material to REC Marine's hiring decision. Information is considered material for purposes of the *McCorpen* defense when "an employer asks a specific medical question on an application, and . . . the

---

[56] *Id.*, p. 5.
[57] *Id.*, p. 5.
[58] *Id.*, p. 7.
[59] *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 174 (5th Cir. 2005) (internal quotation marks and citation omitted).

inquiry is rationally related to the applicant's physical ability to perform his job duties."[60] "However, if an employee can show that, even if undisclosed facts were material, he or she would have been hired regardless, the employer is not entitled to the *McCorpen* defense to evade its maintenance and cure obligation."[61]

REC Marine contends the materiality prong is met.[62] Had Plaintiff disclosed his prior history of shoulder problems, REC Marine states it would have required further medical information, including prior medical records, and would have required additional evidence of Plaintiff's capability of performing the duties of vessel captain before a decision was made as to his employability.[63] REC Marine asserts the pre-employment medical questionnaires and examination were calculated to ascertain the existence of any medical condition that might impact Plaintiff's ability to perform his job duties as a vessel captain. Given the physical nature of the work of a vessel captain, REC Marine argues there is no dispute that information concerning Plaintiff's prior shoulder problems is clearly a material medical fact.[64] In response, Plaintiff asserts REC Marine had knowledge of Plaintiff's arthritis and chose to hire him without further inquiry, and this is sufficient to create an issue of fact was to whether a material concealment exists.[65]

In this case, REC Marine specifically asked questions on the pre-employment questionnaires and during the interview related to injuries of the shoulder, joint problems, and other diseases, and it is undisputed that the duties of a vessel captain for

---

[60] *Id.* at 175.
[61] *Hare v. Graham Gulf, Inc.*, 22 F. Supp. 3d 648, 654 (E.D. La. 2014) (Morgan, J.) (citing *McCorpen*, 396 F.2d at 551–52).
[62] R. Doc. 26-4, pp. 8–9.
[63] R. Doc. 30 (citing R. Doc. 26-6, p. 21.).
[64] R. Doc. 26-4, pp. 8–9.
[65] R. Doc. 31, p. 7. Plaintiff states in his opposition that the post-offer questionnaire did not inquire as to any additional details about his arthritis. *Id.* However, the form instructs the prospective employee to "explain in detail the nature of the injury or condition, the type of treatment received, and the name and phone number of doctor, medical provider or medical facility providing the treatment" if the prospective employee answered "YES" to any of the medical questions. R. Doc. 26-2, p. 15. Plaintiff failed to do so.

REC Marine involve physical labor.[66] Thus, REC Marine's inquiries into shoulder injuries, joint problems, and other diseases are rationally related to Plaintiff's physical ability to perform his job duties as vessel captain. Additionally, REC Marine's Operations Manager declared under penalty of perjury that, had Plaintiff fully disclosed his medical history, "REC Marine would have required further medical information from [him], including prior medical records, and would have required further evidence of [his] capability of performing the duties of a vessel captain before a decision was made as to his employability."[67] Plaintiff has not come forward with any evidence to show that he would have been hired even if he had fully disclosed his shoulder conditions. Accordingly, the Court finds the information withheld regarding Plaintiff's shoulder problems was material to REC Marine's hiring decision.

### 3. Causality

To establish the third element of the *McCorpen* defense, REC Marine must establish a connection between the concealed medical fact and the injury that led to the claim for maintenance and cure benefits. In establishing the requisite causal relation, a present injury need not be identical to a previous injury: "All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage."[68] To establish this connection, it is sufficient to show that the previous injury and the new injury occurred in the same location on the body.[69] Indeed,

---

[66] R. Doc. 30, p. 2 (stating "[t]he duties of a vessel captain at REC Marine can include, but are not limited to: climbing and/or descending of ladders and/or stairs to reach the wheelhouse, galley and engine room spaces; climbing from docks onto tugs and back; climbing from barges onto tugs and back; climbing ladders, stairs, and/or gangways to gain access to offshore facilities serviced by REC Marine's vessels; performing routine maintenance and minor vessel repairs; assisting with the making or breaking of tow; and occasional lifting of up to 20 to 25 lbs"); R. Doc. 31-1, p. 1 (admitting this statement).
[67] R. Doc. 26-2, pp. 20–22.
[68] *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 176 (5th Cir. 2005) (internal quotation marks and citation omitted).
[69] *Id.*

"[t]he inquiry is simply whether the new injury is related to the old injury, irrespective of their root causes."[70]

REC Marine contends the third prong is clearly established because Plaintiff's pre-existing shoulder condition affected the same right rotator allegedly torn in the HUET exercise.[71] Although arthritis of the shoulder may be different from a full thickness rotator cuff tear, REC Marine claims the causal connection between Plaintiff's bilateral shoulder impingement and his rotator cuff tear is clear, as the Plaintiff's doctor testified that shoulder impingement is an "inflammation of the tendons of the rotator cuff" and that he even "thought [Plaintiff] probably had a partial [cuff] tear" prior to the HUET incident.[72] Thus, REC Marine argues there is no doubt that Plaintiff's current injury is causally connected to Plaintiff's pre-existing shoulder problems.

Plaintiff responds by arguing that the mere fact his arthritis affected his shoulder—the same body part that he sustained injury to during the HUET exercise—is not necessarily sufficient to meet the causation element.[73] He argues the conditions need to be identical or, at the very least, cause similar symptoms.[74] In this case, Plaintiff distinguishes between a full thickness rotator cuff tear and arthritis.[75] He claims that before the HUET exercise, "his right shoulder was fully functioning and there was no impediment to his performing the essential functions of the job," which he cannot now perform.[76] Plaintiff argues that his doctor never restricted his ability to work prior to the HUET exercise because the doctor "felt that his tendons were intact and he was

---

[70] *Johnson v. Cenac Towing, Inc.*, 599 F. Supp. 2d 721, 728–29 (E.D. La. 2009) (Vance, J.) (citations omitted).
[71] R. Doc. 34, p. 2.
[72] R. Doc. 26-4, pp. 9–10, 14–15.
[73] R. Doc. 31, p. 10.
[74] *Id.*
[75] *Id.*, p. 7.
[76] *Id.*, p. 11.

responding to treatment and able to perform normal duties."[77] Plaintiff also points to his doctor's deposition where the doctor testified that Plaintiff's prior and current condition were not one and the same.[78]

In this case, Plaintiff's bilateral shoulder impingement and arthritis affected the right shoulder. Specifically, the impingement caused inflammation of the tendons of Plaintiff's rotator cuffs.[79] Plaintiff's doctor testified at his deposition that bilateral impairment syndrome is a degenerative condition that can progress to rotator cuff tears.[80] In this case, Plaintiff's complained-of injury—a right rotator cuff tear—involves the same part of the body affected by Plaintiff's shoulder impingement syndrome. Where a plaintiff claims an injury in the exact same area, the causal connection is clear.[81] Accordingly, REC Marine has established all three elements of the *McCorpen* defense as to Plaintiff's shoulder injury.

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant REC Marine's Motion for Partial Summary Judgment is **GRANTED** with respect to Plaintiff's maintenance and cure claim against REC Marine.[82]

---

[77] *Id.*, p. 7.
[78] *Id.*, p. 8. Plaintiff's doctor testified: "I felt something significantly different had happened from a mechanical and functional standpoint. But my estimation based on earlier visits and then the final visit saw that something different had happened." R. Doc. 31-6, p. 11.
[79] Plaintiff's doctor also testified that he thought Plaintiff probably had a partial rotator cuff tear before the HUET exercise. R. Doc. 34-1 at p. 2.
[80] R. Doc. 31-6, pp. 5–6.
[81] *See, e.g.*, *Weatherford v. Nabors Offshore Corp.*, No. 03-0478, 2004 WL 414948, at *3 (E.D. La. Mar. 3, 2004) (Duval, J.).
[82] R. Doc. 26.

**New Orleans, Louisiana, this** <u>19th</u> **day of June, 2015.**

_____
SUSIE MORGAN
UNITED STATES DISTRICT JUDGE