UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARRELL D. LADNIER,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-1278** |
| **REC MARINE LOGISTICS,**<br>**LLC, ET AL.,**<br>    **Defendants** | **SECTION: "E" (4)** |

## ORDER

Before the Court is a motion *in limine* filed by Defendant Safety & Training Consultants, LLC, to exclude the expert report and proposed testimony of Stephen R. Syson.[1] Plaintiff Darrell D. Ladnier opposes the motion.[2] The Court has considered the briefs, the record, and the applicable law and now issues its ruling. For the reasons that follow, the motion *in limine* is **GRANTED**.

## BACKGROUND

This matter involves personal injuries allegedly sustained by Plaintiff Darrell Ladnier ("Ladnier") during a Helicopter Underwater Escape Training ("HUET") exercise at a facility owned and operated by Defendant Safety & Training Consultants, LLC.[3] Ladnier was sent to the training exercise by his employer, REC Marine Logistics, LLC.[4] During the training, Ladnier was seated inside a helicopter simulator, which was inverted in a pool as part of the exercise.[5] Ladnier contends his safety belt failed to operate properly while the simulator was inverted, thereby trapping him underwater and causing him to struggle to escape.[6] Ladnier claims he sustained injuries to his right shoulder as a result

---

[1] R. Doc. 37.
[2] R. Doc. 40.
[3] R. Doc. 1 at 2; R. Doc. 37-1 at 5.
[4] R. Doc. 1 at 2–3; R. Doc. 37-1 at 5.
[5] R. Doc. 1 at 2; R. Doc. 37-1 at 5–6.
[6] R. Doc. 1 at 2; R. Doc. 37-1 at 5–6.

1

of the incident.[7] Due to the injuries he allegedly sustained, Ladnier filed this lawsuit on June 3, 2014, against his employer, REC Marine Logistics, LLC ("REC Marine"), and Safety & Training Consultants, LLC ("STC").[8] Ladnier's principal claim is that his right-shoulder injuries were caused by the negligence of STC and REC Marine.[9]

On June 5, 2015, STC filed the instant motion *in limine*, seeking to exclude the proposed testimony of Stephen Syson, a purported expert witness retained by Ladnier.[10] STC argues Syson's proposed expert testimony should be excluded because it (1) "will not assist the trier of fact;" (2) is "not based upon sufficient facts or data;" and (3) is "not the product of reliable principles and methods reliably applied to the facts of the case."[11] It is this motion which is presently before the Court for decision.

## LEGAL STANDARD

The Federal Rules of Evidence permit an expert witness with "scientific, technical or other specialized knowledge" to testify if such testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," so long as "the testimony is based upon sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case."[12] The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, provides the analytical framework for determining whether expert testimony is admissible under Rule 702.[13] Under the *Daubert* framework, district courts serve as "gatekeepers," tasked with making a preliminary assessment of whether the

---

[7] R. Doc. 37-1 at 5–6. *See also* R. Doc. 1 at 2.
[8] *See generally* R. Doc. 1.
[9] R. Doc. 1 at 2–3.
[10] *See generally* R. Doc. 37-1.
[11] R. Doc. 37-1 at 5.
[12] FED. R. EVID. 702.
[13] 509 U.S. 579 (1993).

proffered expert testimony is both reliable and relevant.[14] The party offering the expert opinion must show, by a preponderance of the evidence, that the expert's testimony satisfies *Daubert* and is both reliable and relevant.[15]

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid."[16] "The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation."[17] In *Daubert*, the Supreme Court enumerated several non-exclusive factors that courts may consider in evaluating the reliability of expert testimony.[18] "These factors are (1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community."[19] The Supreme Court cautioned that the reliability analysis must be flexible: the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[20] Thus, "not every *Daubert* factor will be applicable in every situation . . . and a court has discretion to consider other factors it deems relevant."[21] In sum, the district court is offered broad latitude in making expert testimony determinations.[22]

---

[14] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)).
[15] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[16] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). *See also Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).
[17] *Burst v. Shell Oil Co.*, 12o F. Supp. 3d 547, 550 (E.D. La. 2015) (internal citations omitted).
[18] *Daubert*, 509 U.S. at 592–96.
[19] *Bocanegra*, 320 F.3d at 584–85 (citing *Daubert*, 509 U.S. at 593–94).
[20] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).
[21] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004).
[22] *See, e.g., Kumho Tire*, 526 U.S. at 151–53.

Expert testimony, to be admissible under Rule 702, must also be relevant.[23] In assessing whether proposed expert testimony is relevant to a particular case, the district court must, at all times, remain "cognizant of Rule 702's requirement that expert evidence or testimony must assist the trier of fact to understand the evidence or determine a fact in issue; expert testimony that does not relate to any issue in the case is not relevant."[24] The court should consider "whether the reasoning or methodology 'fits' the facts of the case and will thereby assist the trier of fact to understand the evidence."[25] Moreover, "[i]f an opinion is fundamentally unsupported, then it offers no expert assistance to the jury," is not relevant to the case, and should be excluded.[26]

## DISCUSSION

Stephen Syson was retained as an expert witness in this case by the Plaintiff, Darrell Ladnier. According to Syson, he is an expert in the field of "automotive design analysis engineering," which Syson defines as the "specialty of analyzing the design and performance of vehicles, including restraint systems."[27] Syson prepared an expert report dated April 15, 2015, noting that he "analyzed the performance of the helicopter simulator seatbelt buckle assembly to determine if the seatbelt buckle was a producing cause of Darrell Ladnier's shoulder injuries."[28]

Syson's expert report, however, contains very little "report." Approximately 70% of the report is dedicated to summarizing Syson's experience, generally, in the field of

---

[23] *See Daubert*, 509 U.S. at 589–91.
[24] *Hagan v. Jackson Cnty., Miss.*, No. 1:13CV268-HSO-RHW, 2016 WL 1091107, at *5 (citing *Daubert*, 509 U.S. at 591).
[25] *Nagle v. Gusman*, No. 12-1910, 2016 WL 560688, at *5 (E.D. La. Feb. 12, 2016) (citing *Daubert*, 509 U.S. at 591).
[26] *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)) (internal quotation marks omitted). *See also Nagle*, 2016 WL 560688, at *5.
[27] R. Doc. 37-3 at 1 (Expert Report of Stephen R. Syson).
[28] R. Doc. 37-3 at 1 (Expert Report of Stephen R. Syson).

4

"automotive design analysis engineering" and his involvement with other projects and studies in that field.[29] Much of the report is "filler," including such items as his design experience with respect to air bags and vehicle structures and how to do a "real world," as he calls it, collision analysis.[30] Although his experience with automotive restraint systems is admittedly extensive, it generally involves vehicular collisions.[31] His only reference to seatbelt buckle performance which might be relevant to the facts of this case is that he "had tests conducted of safety belt buckles to determine why they would fail to release after a collision, in terms of both fire and immersion,"[32] but the Court has found no correlation between the results obtained in those tests and the facts of this case. A nearly two-page section on "General Crashworthiness" mentions that STC's helicopter simulator violated the principles of crashworthiness, but the principles invoked apply to "severe crashes."[33] Such a crash did not occur in this case. It is clear to the Court that very little of Syson's experience involves the issues confronted in this case and, perhaps as a result, very little of his report is devoted to actually applying his knowledge and experience to the facts and circumstances of this particular case.

As best the Court can tell, the opinions contained in Syson's report which *are* specific to the facts of this case include the following:

> Safety & Training Consultants failed to act with reasonable care, since Safety & Training Consultants failed to assess the consequences of the difficulties associated with unlatching a buckle while the safety belt is under load and the buckle is corroded and lacks lubrication.

---

[29] *See* R. Doc. 37-3 at 1–7 (Expert Report of Stephen R. Syson).
[30] R. Doc. 37-3 at 3–6 (Expert Report of Stephen R. Syson).
[31] R. Doc. 37-3 at 6–7 (Expert Report of Stephen R. Syson).
[32] *See* R. Doc. 37-3 at 6 (Expert Report of Stephen R. Syson).
[33] *See* R. Doc. 37-3 at 6–7 (Expert Report of Stephen R. Syson). Moreover, it appears that the materials that Syson relied on with respect to seatbelt buckle performance during "severe crashes" are, at least in part, outdated. *See* R. Doc. 37-1 at 18–19; *see generally* R. Doc. 37-5. This further undermines the reliability of Syson's opinions.

> Safety & Training Consultants failed to act with reasonable care since it conducted no appropriate safety systems analysis, including but not limited to:
> - Failure Mode and Effects Analysis
> - Design Failure Mode Analysis
> - Risk Hazard and Danger Analysis
> - Root Cause Analysis
> - Identification of potential risks, hazards and dangers.
>
> The use of one or more of these engineering analysis functions is mandatory to determine if a vehicle's safety systems will perform adequately.
>
> REC Marine failed to provide a reasonably safe workplace, since they failed to appropriately assess the risks, hazards and dangers associated with requiring that Mr. Ladnier be exposed to Safety & Training Consultants' helicopter simulator.[34]
>
> Ladnier's safety belt became jammed in the buckle during the inversion. Therefore, the safety belt failed to meet the NHTSA, restraint system industry and military recommendations that safety belts should be easy to unlatch after a collision.[35]

The Federal Rules of Evidence require that expert testimony be based upon sufficient facts or data to be admissible.[36] Moreover, Federal Rule of Civil Procedure 26 requires that an expert's report include the facts or data which the expert considered in forming his opinions.[37] Syson's report does include general statements concerning his reliance on his background and training, mostly with respect to vehicular collisions,[38] but these references are not sufficient to satisfy Rule 26. Syson also purports to rely on the laws of physics and the principals of automotive and mechanical engineering,[39] but his references to these general principles are not sufficient to satisfy Rule 26 with respect to the bases of his opinions or his methodology. Only in Section VII, Event Analysis, does

---

[34] R. Doc. 37-3 at 9 (Expert Report of Stephen R. Syson).
[35] *See* R. Doc. 37-3 at 8 (Expert Report of Stephen R. Syson).
[36] FED. R. EVID. 702.
[37] FED. R. CIV. P. 26.
[38] *See* R. Doc. 37-3 at 1 (Expert Report of Stephen R. Syson).
[39] R. Doc. 37-3 at 1 (Expert Report of Stephen R. Syson).

Syson identify the physical and testimonial evidence he examined, including (1) the accident report, and other reports;[40] (2) Ladnier's deposition; (3) Photographs of the simulator and its occupant restraint system; and (4) Exemplar safety belts from Safety Belts Plus and David Aircraft Products.[41] The Court must assume that this is the universe of the facts and data considered by Syson in forming his opinions.

Under *Daubert*, the Court is required to make a preliminary assessment of whether Syson's expert testimony is reliable and relevant.[42] The plaintiff has the burden of showing by a preponderance of the evidence that the expert's testimony satisfies *Daubert* and is both reliable and relevant.[43] The *Daubert* case enumerates the non-exclusive factors courts may consider in evaluating the reliability of expert testimony as (1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community.[44] Syson's analysis, as described by him, is that he (1) made a detailed study of the photographic evidence; (2) analyzed technical drawings and patents for other lever-type safety-belt buckles; (3) inspected other buckles similar to and different from the subject Seat Belts Plus buckle; and (4) reviewed research materials regarding buckle design, including patents, SAE papers, test reports, and defect investigations.[45] In Section III, Assignment, Paragraph B, Syson states that he performed his analysis using methods

---

[40] This vague reference to "other reports" is not considered for purposes of this order.
[41] *See* R. Doc. 37-3 at 8 (Expert Report of Stephen R. Syson).
[42] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)).
[43] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[44] *See Daubert*, 509 U.S. at 593–94.
[45] *See* R. Doc. 37-3 at 8 (Expert Report of Stephen R. Syson).

which are used by other restraint-system engineers engaged in the profession of accident analysis.[46] No further explanation is provided. In Section IV, Test Data Analysis, Paragraph B, Syson states: "My analysis of test data was supplemented by mathematical modeling of both occupant kinematics and vehicle structural dynamic performance."[47] This appears to be a statement from a previous report inadvertently included in the Ladnier report. If not inadvertently included, the Court is perplexed as it could find no other reference to any test data or mathematical modeling performed by Syson in this case. Syson has failed to adequately identify and describe the techniques or theories he applied in reaching his opinions. As a result, the Court is unable to determine whether the theory can or has been tested, whether it has been subject to peer review, whether it has a known or potential rate of error when applied, whether there are existing and maintained standards and controls, or whether the technique or theory has been generally accepted in the scientific community. After applying the factors enumerated in *Daubert*, the Court finds that Ladnier has failed to establish by a preponderance of the evidence that Syson's expert testimony is reliable.

Furthermore, with respect to Syson's first opinion, that STC "failed to assess the consequences of the difficulties associated with unlatching a buckle while the safety belt is under load and the buckle is corroded and lacks lubrication," it is within the province of the jury to conclude that metal submerged under water may rust and, if it does, become difficult to operate. Expert testimony on this issue is not needed to aid the trier of fact.

---

[46] R. Doc. 37-3 at 4 (Expert Report of Stephen R. Syson).
[47] *See* R. Doc. 37-3 at 4 (Expert Report of Stephen R. Syson).

## CONCLUSION

For the reasons stated above, **IT IS ORDERED** that STC's motion *in limine*[48] is **GRANTED**, and Stephen Syson is precluded from offering his proposed expert testimony at the trial of this matter.

**New Orleans, Louisiana, this 25th day of March, 2016.**

*(signature: Susie Morgan)*
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[48] R. Doc. 37.